IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JOHN A KEENAN, ) | |
|     Plaintiff, ) | |
| ) | |
| v. ) | Case No. 09-CV-240-JHP-FHM |
| ) | |
| GAP EXPLORATION, LTD, ) | |
| A Florida Partnership, ) | |
| ) | |
| and ) | |
| ) | |
| RICHARD A. COUNTS, ) | |
| ) | |
|     Defendants. ) | |

## OPINION AND ORDER

Before the Court is Defendants GAP Exploration Ltd., and Richard Counts' Motions To Dismiss Plaintiff's Amended Complaint and Memorandum of Law [Dockets Nos. 37 and 38], Plaintiff's Response in Opposition to said Motions [Docket No. 42] and Defendants' Reply Briefs [Docket Nos. 45 and 46].[1] For the reasons stated herein, Defendants' Motion To Dismiss are **GRANTED**[2].

## BACKGROUND

On August 28, 2008, Robert Shulte filed a lawsuit individually and as a partner of GAP

---

[1] Defendants GAP Exploration, Ltd., and Richard Counts' Motion To Dismiss and Motion To Change Venue [Docket Nos. 7 and 9], Plaintiff's Response in Opposition To Defendants' Motion [Docket No. 12] and Errata/Correction to Plaintiff's Response [Docket No. 15], Defendants' Amended Reply [Docket No. 25] and Plaintiff's Surreply [Docket No. 31] are deemed **MOOT** as a result of the filing of Plaintiff's amended Complaint [Docket No. 30].

[2] Defendants' Motions To Dismiss assert various issues including res judicata and that these claims should have been raised as a compulsory counter claim. The Court does not address the Defendants' substantive arguments since it finds that venue is not appropriate in the Northern District of Oklahoma.

1

Exploration, Ltd., (hereinafter "GAP") against Richard Counts and John Keenan (hereinafter "Keenan") in the Circuit Court of the Twentieth Judicial District in and for Collier County, State of Florida seeking among other things the dissolution of GAP, an accounting, appointment of a receiver and expulsion of Counts as a partner. On November 14, 2008, GAP intervened in the lawsuit asserting claims against Keenan and Richard Counts. GAP sought, among other things:

> (A) a declaration that neither Keenan nor Shulte have any ownership interest in GAP; (B) an Order enjoining Shulte and Keenan from further asserting any ownership interest in GAP; and (C) an Order awarding costs and fees to GAP from Shulte.
> [Docket No. 12-5]

Keenan was served in the Florida litigation but failed to enter an appearance or file any pleadings. As such, the Florida court entered a default judgment against Keenan declaring that he has no ownership interest, and has never had any ownership interest in GAP and enjoining him from further asserting any ownership interest in GAP. [see Final Default Judgment, Docket No. 7-5]

On April 23, 2009, Keenan filed this action against Richard Counts and GAP alleging agreements he made in 2002 with Counts and GAP for a half-ownership interest in various oil and gas properties had been breached. On May 20, 2009, Defendants GAP and Counts filed a Motion To Dismiss and Motion To Transfer Venue claiming Keenan's claims are barred by the doctrines of *res judicata* and claim preclusion because of the earlier Florida litigation. The Motion also claims the Northern District of Oklahoma is an improper venue since GAP and Counts do not have adequate contacts with Oklahoma and because a consulting agreement which Keenan entered into includes a forum selection clause which chose Florida as having exclusive jurisdiction and venue over any disputes arising out of that agreement. A Response in Opposition was filed as well as reply and surreply briefs. On July 31, 2009, the Plaintiff amended the Petition. Shortly thereafter

Defendants GAP and Counts filed Motions to dismiss the Amended Complaint and Memorandums of Law. Responses and replies were filed to those Motions. On December 21, 2009, the Court heard oral arguments regarding the pending motions.

## DISCUSSION

### A.   Venue As To GAP

Forum selection clauses are frequently classified as either mandatory or permissive. *Excell, Inc. v. Sterling Boiler & Mechanical, Inc.,* 106 F.3d 318, 321 (10th Cir.1997). Mandatory forum selection clauses contain "clear language showing that jurisdiction is appropriate only in the designated forum." *Id.* (citations omitted). In contrast, permissive forum selection clauses authorize jurisdiction in a designated forum but do not prohibit litigation elsewhere. *Id.* In addressing forum selection clauses, the circuits that have addressed the issue are in agreement that where venue is specified within in the forum selection clause with mandatory or obligatory language, the clause will be enforced; where only jurisdiction is specified, the clause will generally not be enforced unless there is some further language indicating the parties' intent to make venue exclusive. *K & V Scientific Co., Inc. v. Bayerische Motoren Werke Aktiengesellschaft ("BMW"),* 314 F.3d 494, 499 (10th Cir.,2002); *see also Paper Express, Ltd. v. Pfankuch Maschinen GmbH,* 972 F.2d 753, 757 (7th Cir.1992); *see John Boutari & Son, Wines & Spirits, S.A. v. Attiki Imp. & Distrib. Inc.,* 22 F.3d 51, 52 (2d Cir.1994) (same); *Docksider, Ltd. v. Sea Tech., Ltd.,* 875 F.2d 762, 764 (9th Cir.1989) (same); *Citro Florida,* 760 F.2d at 1232 (concluding that language of forum selection clause discussing jurisdiction in nonexclusive language reasonably could be construed as permissive); *Keaty v. Freeport Indonesia, Inc.,* 503 F.2d 955, 957 (5th Cir.1974) (same).

The United States Supreme Court has consistently accorded choice-of-forum provisions

presumptively valid although this presumption may be overcome by a clear showing that the provisions are unreasonable under the circumstances. *Allen v. Lloyd's of London*, 94 F.3d 923, 928 (4th Cir. 1996) citing *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972). The Tenth Circuit generally views motions to dismiss based on a forum selection clause as a motion to dismiss for improper venue under Fed.R.Civ.P. 12(b)(3). *Riley v. Kingsley Underwriting Agencies Ltd.*, 969 F.2d 953 (10th Cir. 1992).

The forum selection clause in the consulting agreement between GAP and Keenan states:

> **CHOICE OF LAW AND VENUE**
> The laws of the State of Florida will govern the interpretation, validity and effect this agreement without regard to the place of execution or the place of performance thereof and Gap and Consultant agree that the state and federal court situated in Naples, Florida shall have personal jurisdiction over Gap and Consultant to hear any and all disputes arising under this agreement. This agreement is to be at least partially performed in Naples, Florida, and as such, Gap and Consultant agree that venue shall be proper with the state or federal courts in Collier County, Florida. In the event either Gap or Consultant is not able to effect service of process upon the other with respect to such disputes, Gap and Consultant expressly agree that the Secretary of State for the State of Florida shall be an agent of Gap and/or Consultant to receive service of process on their respective behalves [sic] with respect to such disputes.
> [Docket No. 7-8]

Since this forum selection clause specifically mandates a location for venue regarding disputes as well as personal jurisdiction in unambiguous, obligatory language, this clause is deemed mandatory and will be enforced by this Court. (*See generally Milk "N' More, Inc. v. Beavert*, 963 F.2d 1342 (10th Cir. 1992))

However, the Plaintiff argues that the dispute regarding venue turns on the language in the forum selection clause which states it governs "any and all disputes arising under this agreement". Keenan argues that since this litigation involves a dispute regarding the conveyance of oil and gas

interests that were conveyed through a contractual agreement separate and apart from the consulting agreement, this dispute does not "arise under" the terms of the consulting agreement. Defendants argue that the consulting agreement's terms are broad enough to encompass all of Keenan's dealings with Gap.[3] Defendants further point to testimony which Keenan has given in other proceedings which indicates that even in Keenan's opinion, his salary under the consulting agreement and the money he was receiving in conjunction with his other oil and gas dealings with Gap were one and the same. As such, the consulting agreement should control the venue and jurisdictional aspects of this litigation.

The consulting agreement contains the following additional provisions:

### EXCLUSIVE NATURE OF CONSULTANCY

Consultant agrees to devote his full time and best efforts exclusively to furthering, promoting, and developing the business activities of Gap and its principal owners. During the term of this agreement Consultant shall not engage in or be concerned with any other business duties or pursuits whatever, directly or indirectly, and whether in competition with Gap or otherwise. Without limiting the foregoing, Gap consultant agrees that during the term of this agreement, Consultant will not, on his own behalf of any other person, form, partnership, association, corporation or other entity as an owner, employee, officer, agent, advisor, or otherwise, directly or indirectly, engage in the energy business or real estate business in competition with Gap, or promote, aid or assist any other business enterprise which engages in the energy business or real estate business in competition with Gap.
[Docket No. 7-8]

### TERMINATION OF CONSULTANCY

. . . Upon termination of this agreement, Consultant shall immediately

---

[3] Defendants generally deny any conveyance of mineral interests to the Plaintiff took place and suggest that any documents produced by the Keenan to support his assertions that interests in Gap properties were conveyed to him are fraudulent; however, the Defendants contend that even if anything was conveyed to the Plaintiff, these transactions would still arise under the terms of the consulting agreement.

> return to Gap any and all property of Gap of whatever nature, whether tangible or intangible, which are in Consultant's possession or under his control or relate to Gap's business before the final payment of compensation will be made.
> [Docket No. 7-8]

Defendants contend that since the consulting agreement has a provision dictating that Keenan "shall not engage in or be concerned with any other business duties or pursuits whatever, directly or indirectly, and whether in competition with Gap or otherwise" it is in direct conflict with Keenan's assertions that during this time he was involved in a separate partnership with Gap wherein he owned 50% of various oil and gas interests with Gap. Since Keenan claims the oil and gas partnership was formed in 2001, he would have been aware of those obligations and the impact the exclusivity clause in the consulting agreement (entered into in 2003) had on those alleged continuing transactions and partnerships. Defendants also contend that the oil and gas interests are the property of Gap which is covered under the termination provision of the consulting agreement which states that any property that the consultant has of Gap's at the end of the consultancy, must be returned.

Defendants further points to statements made by Keenan, under oath in other proceedings where he discussed his compensation under the consulting agreement and his share of the mineral interests. On June 5, 2009, Keenan testified in a criminal proceeding (State of Florida v. Robert Shulte) wherein he gave the following testimony:

> Again, I'll go back and I'll answer it the way I've answered these before.
> Before this whole mess started, I sent back to Mr. Counts over $300,000.00. Subsequent to that, all I ever took out of my share of those oil and gas properties was this consulting agreement money of $20,000 a month.
> [Docket No. 25-7]

6

Defendants use Keenan's testimony to establish that, by his own admission, he was receiving his monthly consulting fees, which are governed under the terms of the consulting agreement, out of the shares of the oil and gas properties which are the subject of this litigation. Defendants contend that by Keenan's admissions, and by the terms of the consulting agreement, the dispute regarding the ownership of the oil and gas properties "arises under" the consulting agreement and as such, should be subject to the mandatory venue provisions therein. This Court agrees.

Keenan has admitted that the funds he received under the consulting agreement and the funds he received in relation to the oil and gas properties which are the subject of this litigation are intermingled. Further, by the terms of the consulting agreement, which was entered into after the alleged partnership was formed, Keenan was required to cease any additional profit making activities and focus his time and efforts solely on the consulting he was retained to conduct on behalf of Gap. By the plain language of the consulting agreement this would encompass the oil and gas partnerships Keenan claims to have had with Gap. Keenan allegedly entered into the oil and gas partnership with Gap in 2001. As such, he would have been aware of the impact the consulting agreement had on his oil and gas interests and knowingly entered into the consulting agreement despite this. Because of this, it seems several of the defenses the Defendants plan to assert if this litigation proceeds will focus on Keenan's obligations under the consulting agreement.

The Court is aware that "where two seemingly conflicting contract provisions reasonably can be reconciled, a court is required to do so and to give both effect." *McDermott International, Inc. v. Lloyds Underwriters of London,* 944 F.2d 1199 (5th Cir.1991) (*quoting Proyecfin de Venezuela, S.A. v. Banco Industrial de Venezuela, S.A .,* 760 F.2d 390, 395-96 (2d Cir.1985). There is no venue selection clause in the contracts which allegedly grant the oil and gas interests to Keenan.

7

Therefore, by giving effect to venue provision in the Consulting Agreement, this Court is ensuring both contracts which are at issue in this litigation are given full effect.

This Court finds that this litigation arises under the consulting agreement and is therefore, subject to the choice of law and venue selection provisions of that agreement which selects Collier County, Florida as an appropriate forum to litigate this dispute. As such, the claims against Gap are hereby **DISMISSED WITHOUT PREJUDICE** for refiling of the same in an appropriate forum.

**B.     Venue as to Richard Counts**

The Plaintiff contends that Richard Counts is not individually a party to the Consulting Agreement and as such, is not subject to its venue provisions. Therefore, any decision by this Court to dismiss or transfer this litigation on the basis of improper venue as a result of the forum selection clause of the consulting agreement only effects the Gap and would leave the litigation against Richard Counts in the Northern District of Oklahoma. That is not the case. "When the alleged conduct of non-parties to a contract is closely related to the contractual relationship, all the participants, parties and non-parties, should benefit from and be subject to any forum selection clauses contained in the same." *Coastal Steel v. Tilghman Wheelabrator LTD,* 709 F.2d 190, 202-03 (3rd Cir.1983); *see also Manetti-Farrow, Inc. v. Gucci America, Inc.,* 858 F.2d 509, 514 n. 5 (9th Cir.1988); see also *E.I. DuPont de Nemours and Co. v. Rhone Poulenc Fiber and Resin Intermediates, S.A.S.,* 269 F.3d 187, 196 (3rd Cir. 2001)("carving out an exception to the enforcement of forum selection clauses against third party beneficiaries would be inconsistent with the law of contracts, which has long recognized that third-party beneficiary status does not permit the avoidance of contractual provisions otherwise enforceable."). This Court finds that Counts, as the managing partner of Gap, is a third party beneficiary of the consulting agreement and as such

is entitled to coverage under its venue provisions.

Even if this Court were to determine that Counts were not covered by the venue provisions of the consulting agreement, venue of the litigation against Mr. Counts is improper in the Northern District of Oklahoma thereby warranting dismissal. Pursuant to 28 U.S.C. 1391(a) where jurisdiction is based solely on diversity of citizenship, as is the case here, venue is proper only in:

> . . .(1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

Richard Counts is a resident of Florida. [see Counts' Affidavit, Doc. No. 7-7] According to Counts' affidavit none of the transactions at issue in this litigation took place in the Northern District of Oklahoma. [Doc. No. 7-7] Keenan's affidavit does not dispute Counts' assertion that these transactions were made outside the state of Oklahoma.[4] [Doc. No. 12-2] The only property interest located in Oklahoma is in Custer County which is located in the Western Judicial District of Oklahoma. [Doc. No. 15, 15-2 and 15-3] Further, there is clearly another forum in which this litigation could have been brought since the forum selected for the dispute between Gap and Keenan is Collier County, Florida. As such, venue is not appropriate in the Northern District of Oklahoma for Keenan's suit against Counts. It is, therefore, Ordered that all claims in this litigation against

---

[4]Keenan's affidavit states the oil and gas properties were "personally signed by Mr. Counts before a notary public and were given to me to document the fact that I co-owned the property interest described therein." [Doc.No. 12-2] There is no mention of where the signatures took place. Keenan's affidavit sets forth numerous contacts Kennan claims Counts has with the state of Oklahoma but he does not include executing the oil and gas property contracts amongst them.

9

Richard Counts are **DISMISSED WITHOUT PREJUDICE** for refiling of the same in an appropriate forum.

**IT IS SO ORDERED**

James H. Payne
United States District Judge
Northern District of Oklahoma